**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| **MARGARET ONDIEKI**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| **SUNRISE SENIOR LIVING** | ) |
| **MANAGEMENT, INC.**, | ) |
| *A Virginia Stock Corporation*, | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT AND JURY DEMAND**

COMES NOW your plaintiff, MARGARET ONDIEKI (hereinafter "Plaintiff" or "Ondieki"), by counsel, and hereby moves that this Honorable Court enter a money judgment and an Order for certain injunctive relief against the Defendant, SUNRISE SENIOR LIVING MANAGEMENT, INC. (hereinafter "Defendant" or "Sunrise"), and as grounds therefor states as follows:

Parties, Jurisdiction and Venue

1. At all times referenced herein, your plaintiff was and is over the age of eighteen and of sound mind, and lawful resident of the United States, and resident and domiciliary of the Commonwealth of Virginia.

2. Upon information and belief, at all material times referenced herein, defendant SUNRISE SENIOR LIVING MANAGEMENT, INC. was and is a Virginia Stock Corporation, doing business at various locations nationwide and worldwide, including location at which Plaintiff was employed by Defendant, Sunrise at Mount Vernon, located at 8033 Holland Road, Alexandria, VA 22306. Upon information and

belief, the facility at which Plaintiff was employed is a residential health care facility, which provides long term care, mental health treatment, and counseling, to persons in need of said services, and the named Defendant regularly transact and does business, from said location.

      3.      Subject matter jurisdiction over the claims herein is proper pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), as this is a civil action arising under Title VII of the Civil Rights Act of 1964, a statute of the United States, and 42 U.S.C. § 1981, also a U.S. statute.

      4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as well as the aforementioned special venue provision of Title VII, found also at 42 U.S.C. § 2000e-5(f)(3), as most, if not all, of the acts referenced herein are believed to have taken place in the Eastern District of Virginia, and upon information and belief, relevant decisions related to the allegations herein occurred in and about Fairfax County, Virginia, and upon information and belief, all personnel records relating to the plaintiff, were and/or are maintained in and around Fairfax County, Virginia, and but for the unlawful actions of Defendant complained of herein, Plaintiff would have remained employed by Defendant, in and around Fairfax County, Virginia.

## Operative Facts

      5.      On or about April 8, 2019, your plaintiff was employed by the defendant as a Care Giver, with employment location at 8033 Holland Road, Alexandria, VA 22306, located in Fairfax County, Virginia, at the initial rate of $12.50 per hour. Plaintiff's employment with Defendant was terminated on or about April 1, 2020, after

her hourly wage had been increased to $14.93 per hour, approximately four to five months into her employment with Defendant.

6. At approximately the same time as Plaintiff was hired, Defendant hired one Eunice, a Ugandan woman, also darkly complected, and African- born, with whom Plaintiff became familiar.

7. At all relevant times herein, your Plaintiff was and is an adult female of Central African race and ethnicity, who is of Kenyan national origin.

8. At all times referenced herein, each supervisory and/or management agent and employee of Defendant was acting within the actual and/or apparent scope of authority of that person, on behalf of Defendant.

9. At all times referenced herein, Plaintiff was performing, and/or did perform, the duties of her position with Defendant in at least a satisfactory, if not exemplary, fashion.

10. Since the date of her hire, Plaintiff performed the duties of a Care Manager, while also covering the front desk as receptionist, and assisted in training of newly hired Care Managers.

11. On March 25, 2020, the Executive Director of the facility, Pamela Mitchell (who is, upon information and belief, an American-born African American person), called Plaintiff on her call phone, asking of Plaintiff had worked the previous day's overnight shift (10:30 p.m. on 3/24/20 to 6:30 a.m. on 3/25/20), to which Plaintiff replied that she had been on the schedule, and had not worked that day, the same being one of her days off.

12. The next day, March 26, 2020, the Executive Director, Pamela Mitchell, again called Plaintiff, to inform her that Plaintiff was being placed on administrative leave with pay, pending an apparent investigation she said was going on, and that Plaintiff's name had "come up" as part of that investigation, having something to do with something allegedly occurring on the night shift of 3/24/20, on a date and time at which Plaintiff was not scheduled to work, and in fact did not work, and had already explained to Defendant as much. Plaintiff explained to Defendant's representatives that she was not at work in connection with any alleged incident, and that their own time records would also confirm that, and that it was nonsensical for her to provide a sworn statement as to how Care Giving work was performed on that night shift, because she was not there.

13. Upon information and belief, whatever allegation Defendant was purporting to investigate regarding the night shift, involved another Care Giver, also African-born, and racially African background, but from Sierra Leone.

14. Upon information and belief, the situation in which Plaintiff's name "came up" was one connected with the alleged actions of her Sierra Leonian [also darkly complected, and African-born] co-worker, and Plaintiff's selection for termination, was as a result of nothing more than the commonality of complexion of skin, and her African-born status and accent, immutable attributes she shared, at least in part, with her Sierra Leonian counterpart, and had nothing to do with any events occurring on a shift on March 24, 2020, as Plaintiff was not at work on that date.

15. Plaintiff is without knowledge as to whether her fellow African-born, Sierra Leonian colleague, engaged in any type of misconduct, but Plaintiff was told that he was being investigated for allegedly being "rude" to one or more patients.

16. Knowing that Plaintiff had not been scheduled to work on whatever night in question a patient apparently claimed rudeness by an "African" employee, on or about March 31, 2020, Pamela Mitchell, Executive Director of Sunrise at Mount Vernon, again demanded that Plaintiff submit some sort of written statement as to "the overnight team and the actions that go on during that shift."

17. Plaintiff had no idea what she was supposed to provide a statement on, much less what it was supposed to be about, or whether it even was involving any particular date, incident, or set of alleged circumstances; accordingly, on April 1, 2020, at approximately 7:37 p.m., Plaintiff wrote an e-mail back to the Executive Director, Ms. Pamela, expressing a preference to communicate via e-mail regarding Defendant's "investigation," also referencing her apology for not being able to field a prior call from Mitchell, as a result of the fact that Plaintiff had been engaged in caring for a baby at her home, making it difficult to answer the telephone, particularly while nursing.

18. On the same April 1, 2020, at around 10:22 p.m., Ira Sunrise, another management employee of Defendant, called Plaintiff to inform her that Pamela Mitchell had Sunrise to notify Plaintiff that she was terminated from her employment from Sunrise at Mount Vernon effective immediately, providing no reason for this action.

19. On April 2, 2020, Plaintiff requested a letter of explanation for the said termination, giving the alleged reason therefor, and received none.

20. Plaintiff was offered no particulars as to the generalized allegation, and in fact was told nothing at all, as a reason, justification, or explanation for, her termination, other than learning, in a later hearing relating to her unemployment compensation claim,

that Defendant was making some sort of unspecified and generalized claim of "bullying" by Plaintiff, as being the basis for her termination.

21. Plaintiff in fact never engaged in any type of bullying or rude behavior of any kind, to any person, whether that person was a co-worker, or a patient, and Defendant's agents knew this.

22. As to any charge of allegation of unwelcome, bullying, or other uncomfortable or inappropriate behavior towards any patient or facility resident, and disciplinary actions in general as to employees of Defendant, your Plaintiff was and is similarly situated to every other care giver employed by Defendant at its Mount Vernon facility, for purposes of the conduct of any investigation and/or disciplinary action, if any, to result from any such allegation/s, as all staff members at said facility presumably were to adhere to the same standards of conduct, with particular regard to issues of harassment, bullying and unprofessional or improper behaviors, at said facility.

23. Upon information and belief, prior to Plaintiff's termination, Plaintiff saw at least one patient at said facility, register a heated complaint, literally in tears, to a Head Nurse or Registered Nurse of Defendant, as a result of the treatment that patient being received at the hands of an American-born, Caucasian Care Giver at the same facility, who functioned in the same chain of command, and/or under a common human resources rules and authority, as Plaintiff was employed and terminated under; however, upon information and belief, nothing came of said complaint, it was not investigated, and the said employee who did that was not disciplined in any sort of way.

24. Upon information and belief, respondent did in fact manage and steer said investigation, and the results thereof, to make it appear that the Plaintiff was guilty of

engaging in said behavior/s, when in fact Plaintiff was not guilty of any untoward behaviors whatsoever.

    25.    Defendant's "investigation", and the following measures were taken and motivated, in whole or in part, by Plaintiff's mix of race and ethnicity, and being African-born:

    (a) Defendant purporting to rely on, and formulating unsigned, written accounts, supposedly of events and patients involved, which accounts were either a complete fiction, or did not reflect what said person/s said or indicated, or which otherwise reflected some sort of discriminatory attitude on such person/s part;

    (b) Defendant, through its human resources personnel and others, engaging in the practice of taking, and purporting to rely on, unsworn, unsigned testimony;

    (c)    Defendant lumping Plaintiff into alleged misdeeds or adopting an attitude that a substantial portion or all African-born persons are rude, as an apparent result her Sierra Leonian coworker's alleged actions, and/or confusing Plaintiff with her Sierra Leonian coworker, for no reason other than both shared the same African-born black ethnicity;

    (d) Defendant failing and/or refusing to obtain factual specifics, from any person, as to exact alleged location/s, time/s, and alleged circumstances of any supposed physical or verbal acts of Plaintiff, or any other person, qualifying as "bullying," both as to patients and coworkers;

    (e) Defendant discounting and/or according less or no weight or credibility to Plaintiff's account of not being present at work on the night of March 24, 2020, as a

direct and proximate result of her African and/or non-American-born African-American race and ethnicity;

(f) Defendant ignored, and refused to look at, available and present time and attendance and leave records, which refuted any allegation of improper behavior on Plaintiff's part, on the overnight shift of March 24-25, 2020;

(g) Defendant applied an unrebuttable presumption of improper behavior/s, to your Plaintiff, as to apparent allegations of "bullying" and/or rudeness, and provided the Plaintiff with no information, on the basis of nothing more than her race and ethnicity, and an apparent geographical, ethnic and racial association with the Sierra Leonean co-worker, demanding no specific, factual proof of the alleged behaviors, as it has previously done with its American-born, and Caucasian, Care Givers, without similarly requiring specific, factual substantiation and specification of misbehavior allegation/s as to time, place, location, persons present, etc.

26. Upon information and belief, the Ugandan co-worker hired at the same time as Plaintiff, Eunice, was also terminated by Mitchell and the Defendant, at or about the same time as Plaintiff was terminated, also apparently with no explanation given.

27. On or about December 19, 2020, arising out of the above events, your Plaintiff sought discrimination counseling, and initiated the process of filing a Charge of discriminatory discharge arising out of the above facts and events, on the basis of national origin, referencing dates of discrimination between March 25, 2020 and the April 1, 2020 date of her termination.

28. Upon information and belief, on or about December 28, 2020, the U.S. Equal Employment Opportunity Commission issued to Plaintiff a "Dismissal and Notice

of Rights" ("Right-to-Sue") letter, in respect of Plaintiff's foregoing charge of race discrimination and retaliation, and a copy of said "right-to-sue" letter was received by the Plaintiff on December 31, 2020.  A true and correct copy of said "Right-To-Sue" letter, as received by Plaintiff, is attached hereto, and incorporated herein, at Exhibit #1.  Your Plaintiff has otherwise exhausted all meaningful administrative remedies and recourse reasonably required of her as precedent to filing and prosecuting this action, and this action is brought within ninety days of the receipt by Plaintiff of said "Right-to-Sue" letter.

29. As a direct and proximate result of Defendant's actions, and Defendant's discharge of your Plaintiff, your Plaintiff has suffered, and continues to suffer, lost wages, pecuniary damages, emotional pain, self-doubt, mental anguish, and embarrassment associated with being fired from a job, as well as having [false] allegations of bullying leveled against her, and your Plaintiff continues to suffer from these.

30. Said actions of Defendant's authorized agents herein were taken with malice and/or reckless indifference to the protected rights of your Plaintiff.

<u>Count I</u>

(Disparate Treatment, Discipline, and Discharge on account of Plaintiff's national origin and ethnicity, contrary to 42 U.S.C. § 2000e-2(a))

31. Paragraphs 1 through 30 above are hereby incorporated and restated herein.

32. As stated above, Plaintiff was and is a member of a protected class, and is a female person of African-born African race, and African [Kenyan] national origin and birth, as distinguished from American-born African Americans), who at all times

referenced herein, was performing her job in at least a satisfactory and/or exemplary manner.

33. In connection with the receipt, processing of, investigation of, and disposition of, any allegation of improper behavior made against Plaintiff, your Plaintiff was lumped in as an offending party with one or more other African-born persons, and was subject to different terms and conditions of investigation, corroboration, credibility determination, and discipline (as more particularly described above) than her American-born and non-African born counterparts, who had been previously accused of, or otherwise allegedly engaged in, various types of unprofessional or improper behaviors, both as to the decision to investigate and take action at all, as well as in connection with the standards and methods of determining outcomes through, investigation, as well as action taken thereon, as to both witness treatment, as well as discipline and disposition of employment.

34. The "bullying" and/or "rude" conduct Defendant apparently claimed [though not to Plaintiff] Plaintiff engaged in was not only non-existent and false, but even as apparently alleged, was not only product of Defendant's "guilt by association" of Plaintiff with another African-born, Sierra Leonean coworker [who upon information and belief, was terminated approximately one week before Plaintiff was], but even as apparently alleged, was (and is) less serious, and at the least, comparable, to the seriousness of alleged or actual misconduct of one or more American-born and/or Caucasian employees of defendant subjected to similar allegations, or subjected to no allegations, investigation or disciplinary action at all, who were and are outside of the

Plaintiff's protected class. and who upon information and belief, at the least, were subjected to progressive discipline, rather than termination as a single sanction.

35. Were it not for the Plaintiff's status as an African-born (Kenya) African American person, Plaintiff's employment with Defendant would not have been terminated.

36. If the Plaintiff had been an American-born African American person, or an American-born or Caucasian person, it is more likely than not that defendant would have, at the very least, likely maintained her employment.

37. Upon information and belief, Plaintiff and/or Plaintiff's functions formerly performed for Defendant as a Care Giver, were replaced by non-African-born persons, and/or persons not of African racial and ethnic descent.

38. If Defendant did hire any Care Givers of African descent after Plaintiff's termination, they were not hired at the higher wage rate Plaintiff was earning, at the time of her termination.

39. Upon information and belief, in assessing the relative merit [or lack thereof] of any allegations of misbehavior on Plaintiff's part, however misbegotten, the Defendant impermissibly used or was motivated, in whole or in part, by the existence of Plaintiff's *very* roughly common racial and ethnic background with her Sierra Leonean coworker, and Plaintiff's African-born status and race in general, as somehow supporting or corroborating [at least, in Defendant's management personnel's minds] the believability of the proposition that Plaintiff had intimidated or bullied any person, or could have even been in a position to do so, or had been rude to any person, much less did do so.

40. As a result of this apparent discrimination by association, your Plaintiff has been caused to suffer undue discipline, loss of reputation, pain, anguish and mental suffering, as well as lost past and future wages and benefits of employment with the Defendant, as described above.

41. As a direct and proximate result of the Defendants' unlawful actions and termination described above and below, your plaintiff has suffered loss underpayment of wages, and lost wages, in the approximate aggregate amount, to date, of $ 60,000.00.

42. As a direct and proximate result of Defendants' unlawful actions and termination described above and below, your plaintiff has suffered a loss of the reasonable value of health insurance benefits.

43. As a direct and proximate result of Defendants' unlawful actions described above and below, Plaintiff has also suffered lack of sleep, loss of health, inability to concentrate, and has otherwise sustained emotional pain and suffering, as well as worry, mental anguish, embarrassment, and guilt associated with said separation, attorney's fees, and resultant financial and personal hardships, as well as expenses in attempt to find work, and continues to suffer these in amounts continuing to accrue, in an amount to be more particularly stated at trial.

44. The Defendants' acts and practices described herein were intentional and were performed with malice and/or reckless indifference to the Plaintiff's federally protected civil rights within the meaning of § 102(b) of the Civil Rights Restoration Act of 1991.

<u>Count I</u>

(Disparate Treatment, Discipline, and Discharge on account of Plaintiff's National Origin and Ethnicity, contrary to 42 U.S.C. § 2000e-2(a))

45. Paragraphs 1 through 44 above are hereby incorporated as if realleged in this Count.

## Count II

(Disparate Treatment, Discipline, and Discharge on account of Plaintiff's Race and Ethnicity, contrary to 42 U.S.C. § 1981)

46. Paragraphs 1 through 44 above are hereby incorporated and restated as if set forth verbatim in this Count.

47. Recovery on this Count is in the alternative, or partial alternative, to any award made under Count I above.

48. The above-referenced acts and omissions of Defendants' supervisory personnel, as to your Plaintiff, were and are violative of 42 U.S.C. § 1981(a), which prohibits discrimination on the basis of race, ethnicity and national origin, in the making, enforcement, performance, and termination of, as well as the enjoyment of all benefits, terms and conditions of, a contractual relationship.

## Prayer for Relief

WHEREFORE, your Plaintiff prays that this Court enter an Order as follows:

(a) ordering that Plaintiff shall be reinstated into the employ of defendant, and that any and all benefits of employment, as well as any fringe and/or retirement benefits, including promotions, step increases, vacation, etc. be accorded to her, *nunc pro tunc*, from the date her employment was terminated, as if she had not been terminated, and as if she had not been subject to discrimination; and

(b)     issuing an injunction prohibiting defendant from continuing to employ procedures and methods of administration, as well as disciplinary action/s, as have the effect of perpetuating discrimination on the basis of race, ethnicity and national origin;

(c)     awarding a money judgment to Plaintiff against Defendant a sum of money equal to the monetary value of all wages and benefits of employment lost, and to be lost, on account of her unlawful separation from the employ of defendant, in an estimated amount, subject to proof at trial, of ONE HUNDRED THOUSAND DOLLARS ($100,000.00); and

(d)     rendering a money judgment representing all compensatory damages recoverable by Plaintiff, on account of pain, suffering, humiliation and mental stress resulting from Defendant's treatment of, and unlawful discharge of, the Plaintiff, in the amount of three hundred fifty thousand dollars ($350,000.00); and

(e)     awarding an injunction forcing the Defendant to purge all negative references, if any, from the Plaintiff's personnel file with the Defendant; and

(f)     awarding plaintiff's reasonable attorney fees, expert witness fees and costs, and other costs incurred in prosecution hereof; and

(g)     awarding such other and further relief as is appropriate to the premises of law and the facts of this case.

Jury Demand

Your Plaintiff hereby demands trial by jury as to all claims so triable.

Respectfully submitted,

MARGARET ONDIEKI
By Counsel

      /s/ Christopher R. Rau
Christopher R. Rau (VSB No. 34135)
Attorney for Plaintiff Margaret Ondieki
LAW OFFICES OF CHRISTOPHER R. RAU
200 Little Falls Street, Suite 501
Falls Church, VA  22046
(703) 536-1660 – Telephone
CRRAU@AOL.COM

Dated: March 9, 2021